IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAFAEL V. TANGUMA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-0367-L |
| | § | |
| JO ANNE B. BARNHART, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a social security case. Plaintiff Rafael V. Tanguma ("Plaintiff" or "Tanguma") filed this action seeking judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income benefits under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(b), and an order of the court in implementation thereof, the case was referred to United States Magistrate Judge Irma C. Ramirez, for review and submission of proposed findings of fact and recommendation for disposition. On September 2, 2005, the Findings, Conclusions and Recommendations of the United States Magistrate Judge (the "Report") were filed, to which Plaintiff timely objected.

After an independent review of the pleadings, file, record, applicable law, the magistrate judge's findings and conclusions, and consideration of Plaintiff's Objections, the court determines that the findings and conclusions of the magistrate judge are correct, and hereby **accepts** them as those of the court.

**Memorandum Opinion and Order – Page 1**

I.      **Factual and Procedural Background**

Rafael V. Tanguma ("Plaintiff" or "Tanguma") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act. On March 11, 1999, Tanguma filed an application for disability benefits, claiming he was disabled due to residuals from a transient ischemic attack, numbness and pain in his right hand and wrist, and residual left-sided weakness as well as headaches, and alleged an onset date of March 1, 1999. His application was denied initially and upon reconsideration. On April 3, 2000, Administrative Law Judge James R. Blinn, Jr. (the "ALJ") held a hearing on Tanguma's application. He issued an unfavorable decision on June 28, 2000, finding Tanguma not disabled. Tanguma filed a timely request for review of this decision. The Appeals Council denied his request on January 10, 2003. The ALJ's decision, therefore, became the final decision of the Commissioner. Tanguma filed this action on February 20, 2003 pursuant to 42 U.S.C. § 405(g).

II.     **Analysis**

    A.      **Legal Standard**

Judicial review in a social security case is limited to a determination of whether the ALJ's decision to deny benefits is: (1) supported by substantial evidence and (2) whether the proper legal standard was applied. *Austin v. Shalala*, 994 F.2d 1170, 1147 (5th Cir. 1993). Substantial evidence is defined as relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th 1994)(citing *Richardson v. Perales,* 402 U.S. 389, 401 (1977)). It is more then a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401; *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989). The district court may not

**Memorandum Opinion and Order – Page 2**

reweigh the evidence or substitute its own judgment for that of the Commissioner. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The court must scrutinize the record, however, to ascertain whether substantial evidence supports the Commissioner's findings. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). A finding of no substantial evidence is appropriate only when there is no medical evidence or credible evidentiary choices in the record to support the Commissioner's decision. *Johnson*, 864 F.2d at 343-44; *Gutierrez v. Barnhart*, 2005 WL 1994289 at *7 (5th Cir. Aug. 19, 2005). If the findings are supported by substantial evidence, "they are conclusive and must be affirmed." 42 U.S.C. § 405(g).

A disabled worker is entitled to monthly benefits under the Social Security Act if certain conditions are met. 42 U.S.C. §423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of twelve months. *Id.* § 423(d)(1)(A); *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985).

The Commissioner has promulgated a five-step sequential process to be used by hearing officers in disability cases. *See* 20 C.F.R. § 404.1520(b)-(f); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). The hearing officer is required to ascertain: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant has an impairment that "meets or equals a listed impairment in Appendix 1" of the regulations; (4) if the claimant has a "severe impairment" under the regulations, whether the claimant can perform his past work despite any limitations; and (5) if the claimant does not have the residual functional capacity to perform past work, whether the claimant can perform any other gainful and substantial work in the economy, considering his age, education, work experience, and

**Memorandum Opinion and Order – Page 3**

residual functional capacity. 20 C.F.R. § 404.1520(b)-(f). In the first four steps of the evaluation process, the claimant bears the burden of proving disability. *Bowen v. Yuckert,* 482 U.S. 137, 146 (1987). The burden then shifts to the Commissioner at the fifth step to show that the claimant is capable of performing work in the national economy. *Id.* If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.     The ALJ's Determination**

At the first step of the sequential evaluation, the ALJ found that Tanguma had not engaged in substantial gainful activity since the alleged onset of disability. At the second and third steps, he found that Tanguma's impairments were severe, but did not meet or equal a listed impairment. At step four of the sequential evaluation, the ALJ concluded that Tanguma retained the residual functional capacity to:

> occasionally lift twenty and frequently lift and carry ten pounds with the left hand, occasionally lift ten pounds and frequently lift and carry five pounds with his right hand, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday . . . The claimant could not perform a job requiring the ability to read/write. He would be limited to frequent gross manipulations and occasional fine manipulations.

Tr. at 13-14. At the fifth step of the sequential evaluation, the ALJ ruled that although Tanguma was unable to perform his past relevant work, he could perform a number of jobs available in the national and state economies including airline security, distributor, flagger, and locker room attendant. *Id.* at 15. Accordingly, the ALJ determined at step five that Tanguma was not disabled within the meaning of the Social Security Act. *Id.*

**Memorandum Opinion and Order – Page 4**

### C. The Magistrate Judge's Report

The parties submitted cross-motions for summary judgment. After meticulously reviewing the entire record, including without limitation the hearing testimony and medical evidence, the magistrate judge recommended that the court grant the Commissioner's motion for summary judgment, deny Tanguma's motion for summary judgment and affirm the final decision of the Commissioner that Tanguma was not disabled under the Social Security Act. In her Report, the magistrate judge rejected Tanguma's two arguments in support of his motion, namely that: (1) the ALJ erred in setting forth his residual functional capacity because the evidence did not support a finding that he could walk for six hours in an eight-hour workday; and (2) the ALJ failed to apply the proper legal standard when he did not ask the vocational expert to explain any conflicts between the expert's testimony and the Dictionary of Occupational Titles.

In rejecting Tanguma's first argument, the magistrate judge found that substantial evidence supported the ALJ's finding that Tanguma could walk for six-hours in an eight-hour workday:

> The medical evidence in the record shows that Plaintiff had a stroke on March 7, 1999. (Tr. at 141.) When he was discharged from the hospital on March 12, 1999, Plaintiff would drag his foot occasionally when walking. (Tr. at 142.) However, his physician opined that he did not suffer symptoms so severe as to interfere much with his locomotion or activities of daily living. *Id.* Three months after the stroke, Plaintiff reported significant improvement in his symptoms, but stated that he was easily tired and that his left leg dragged when tired. (Tr. at 165.) The fact that Plaintiff's leg dragged when tired three months after his stroke is not, in and of itself, conclusive evidence of a disabling condition expected to last more than twelve months. There is no other medical evidence in the record pertaining to any difficulty ambulating. Although Plaintiff's physician stated he believed Plaintiff could not return to his previous work, the medical evidence in the record does not show any restrictions placed on Plaintiff's ability to walk. (Tr. at 121.)

> At the hearing, when asked about his disabling condition, Plaintiff stated that he was unable to work due to strength problems with his left arm. (Tr. at 25.) With respect to his left leg, Plaintiff stated that he was unable to walk quickly and that his leg hurt a little when walking. (Tr. at 29.) When asked by the ALJ if he had any problems walking, Plaintiff replied, "No. I just get tired, that's all." (Tr. at 31.) Plaintiff testified that he was able walk a mile. (Tr. at 35.)

Report at 10. Based on her review of the administrative record, the magistrate judge found that: "significant evidence in the record supports the ALJ's findings as to Plaintiff's RFC." *Id.* at 11.

The magistrate judge also rejected Tanguma's second argument, that is, that the ALJ failed to apply the proper legal standard when he did not ask the vocational expert to explain any conflicts between the expert's testimony that he could perform the jobs of airline security, flagger, and locker room attendant (even though he was illiterate) and the requirements for these positions in the Dictionary of Occupational Titles ("DOT"), namely, that they all require an ability to read. The magistrate judge rejected this argument finding that, under the circumstances, where the ALJ limited the expert to only those jobs which did not require reading ability, there was no conflict evident between the DOT and the testimony of the vocational expert:

> Here, the VE was asked to respond to a hypothetical question which assumed an individual who was limited to jobs that did not require the ability to read and write. (Tr. at 40.) The VE stated that such an individual could perform certain airline security screener positions, could work as a distributor of advertising materials, could work as a flagger at a construction site, and could work as a locker room attendant. (Tr. at 40-42.) With respect to the airline security screener positions, the VE specified that she was limiting her opinion to those screener positions which did not require writing reports. (Tr. at 40.) The ALJ asked the VE again if the screener positions required the ability to read and write and she responded, "No," and noted that "you're only just observing articles that are going on the line, and without having to be responsible for reports." (Tr. at 40-41.)
> Pursuant to the DOT, the positions of Airline Security Representative, 372.667-010, Flagger, 372-667-022, and Locker-Room Attendant, 358.677-014, all require Level 2 language ability,


> indicating an ability to read. However, "the DOT lists the *maximum* requirements for a position as it is generally performed, not the full range of requirements." [*Haas v. Barnhart*, 2004 WL 396982 at *6 (5th Cir. Mar. 4, 2004)] (emphasis added) (citing SSR 00-4p). "[T]he categorical requirements listed in the DOT do not and cannot satisfactorily answer every [] situation.". [*Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)]. Where the VE identifies a lesser number of certain positions within a job title which correspond to limitations not taken into account by the DOT, there is not necessarily a conflict between the VE's testimony and the DOT. [*Haas*, 2004 WL 396982 at *6]. In this case, the ALJ's hypothetical asked the VE to assume that the individual could not perform jobs requiring the ability to read and write. (Tr. at 40.) In addition, the ALJ specifically reminded the VE that [the] only jobs to be presented were those which did not require reading and writing. (Tr. at 41.) When the VE is specifically asked to limit her opinion to reflect appropriate jobs, the Court can assume that she did so. *Lawson v. Apfel*, 46 F. Supp.2d 941, 946 (W.D. Mo. 1998). Moreover, with respect to the airline security screener job, the VE specifically stated that she was limiting her opinion to those positions within that job category that did not require the ability to read and write. (Tr. at 40.) For these reasons, the Court concludes that there was not an unexplained conflict between the VE's testimony and the DOT.

Report at 12-13. The magistrate judge rejected Tanguma's second argument in support of his summary judgment motion on the alternative grounds that, in any event, significant evidence in the record supported the ALJ's finding that there were other jobs available in significant numbers in the national and local economy which could be performed by Plaintiff:

> Even if the Court were to assume that the VE's opinion as to the jobs of flagger and locker room attendant was in error because she failed to specifically state that she was limiting her opinion to those positions not requiring literacy, the fact remains that she clearly identified two jobs which could be performed by Plaintiff. The VE testified that there were approximately 900 airline security screener positions in the state and approximately 1,000 positions as distributor of advertising materials. (Tr. at 40-41.)

*Id.*

**Memorandum Opinion and Order – Page 7**

### D. Plaintiff's Objections

Plaintiff has filed objections to: (1) the magistrate judge's "adoption of the ALJ's determination of the claimant's residual functional capacity to walk for six hours in an eight hour workday"; and (2) the magistrate judge's "rejection of his argument that the ALJ failed to inquire into conflicts between the VE's testimony and the Dictionary of Occupational Titles." *See* Objections at 1-2.  The court will address Tanguma's objections in turn.

#### 1. First Objection

Tanguma objects to the magistrate judge's "adoption of the ALJ's determination of the claimant's residual functional capacity to walk for six hours in an eight hour day." *See* Objections at 1.  According to Tanguma, the magistrate judge's:

> adoption of the ALJ's determination of the claimant's residual functional capacity to walk for six hours in an eight hour day is improper because the Magistrate did not fully consider Plaintiff's argument on appeal that the ALJ['s] decision shows on its face that the ALJ based his decision on [Tanguma's] testimony at the hearing that he could stand, and erroneously cited claimant as testifying at the hearing that he could walk all day, when he did not so testify.  Thus, the magistrate erred in failing to consider whether the evidence cited by the ALJ supported the decision.

As explained directly below, having conducted a *de novo* review of the entire record, the court **overrules** Tanguma's first objection since substantial evidence in the record supports the ALJ's finding that Bibbs could walk for six hours in an eight-hour work day.

"Residual functional capacity" or "RFC" refers to the claimant's ability to do work despite any physical or mental impairments.  20 C.F.R. § 404.1545(a).  The ALJ is responsible for assessing and determining residual functional capacity at the administrative hearing level.  *Id.* § 404.1546. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental

activities in a work setting on a regular and continuing basis." SSR 96-8p. The assessment should be based on all the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545; SSR 96-8p. As already set forth above, the ALJ concluded that Tanguma retained the residual functional capacity to: "occasionally lift twenty and frequently lift and carry ten pounds with the left hand, occasionally lift ten pounds and frequently lift and carry five pounds with his right hand, *stand/walk six hours in an eight-hour workday*, and sit six hours in an eight-hour workday. . . ." Tr. at 13-14. At the hearing before the ALJ, Tanguma testified that he was unable to work due to strength problems with his left arm. *Id.* at 25. He also stated that the fingers on his left hand trembled. *Id.* at 28-29. He complained of problems with his left leg, and stated that he was unable to walk quickly and that his leg hurt a little when walking. *Id.* at 29. Tanguma also testified that he lived alone and performed all his own housework, including cooking, washing dishes, and doing laundry. *Id.* at 29-30. He stated that he could pick up and carry about twenty pounds on a regular basis and stand for six hours in an eight-hour day. *Id.* at 30-31. Tanguma testified that he had no problems sitting, but got tired when walking, and that he could walk back and forth to the store, a total distance of a mile, but needed to rest for an hour or two afterward. *Id.* at 31, 35. Finally, in response to the ALJ's question, "Do you have any problems walking?" Tanguma responded "No. I just get tired, that's all." *Id.* at 31. Finally, Tanguma's medical records indicate no restrictions on his ability to walk. An attending physician in a hospital discharge summary stated that Tanguma: "was able to ambulate and occasionally would drag his foot a bit but not that it would interfere much with his locomotion or activities of daily living." *Id.* at 142.

**Memorandum Opinion and Order – Page 9**

A finding of no substantial evidence is appropriate only when there is no medical evidence or credible evidentiary choices in the record to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988); *Gutierrez*, 2005 WL 1994289 at *7. As set forth above, substantial evidence is defined as relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Greenspan,* 38 F.3d at 236. It is more then a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401; *Haywood,* 888 F.2d at 1466. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson*, 864 F.2d at 343-44. Such is not the case here. Based on a *de novo* review of the entire record, including Tanguma's testimony in response to the ALJ's questions and the lack of medical records indicating any restrictions on his ability to walk, the court concludes that there is substantial evidence in the record to support the ALJ's finding that Bibbs could walk for six hours in an eight-hour work day. Moreover, notwithstanding Tanguma's assertions to the contrary, the ALJ explicitly stated that his findings were based on the "entire" record (*see* Tr. at 15), and not solely on Tanguma's testimony that he could stand for six hours. Accordingly, the court **overrules** Tanguma's first objection to the Report.[1]

---

[1]Although not set forth as a separate objection, Tanguma asserts that the magistrate judge erroneously shifted the burden to him by suggesting a requirement that a claimant at a social security hearing must object at the hearing to anticipated findings of fact in order to avoid waiver of the right to appeal. *See* Objections at 1. In her Report, the magistrate judge at one point characterized Plaintiff's representative's failure to object to the ALJ's characterization of Plaintiff's RFC at the hearing as "noteworthy." *See* Report at 11. Other than remarking on its noteworthiness, she did not base her recommendation on this point or find any waiver by Tanguma. Accordingly, the court **overrules as moot** any objection Tanguma seeks to raise on this ground.

**Memorandum Opinion and Order – Page 10**

**2.     Second Objection**

Tanguma also objects to the magistrate judge's alternate reason for rejecting his second argument in support of his motion for summary judgment. To reiterate, the magistrate judge rejected Tanguma's argument that the ALJ failed to apply the proper legal standard when he did not ask the vocational expert to explain any conflicts between the expert's testimony that he could perform the jobs of airline security, flagger, and locker room attendant (even though he was illiterate) and the requirements for these positions in the Dictionary of Occupational Titles ("DOT"), namely, that they all require an ability to read. The magistrate judge found that there was no conflict under the circumstances, since the ALJ limited the expert to only those jobs which did not require reading ability. Report at 12-13. As an alternate ground for rejecting Tanguma's argument, the magistrate judge found that significant evidence in the record also supported the ALJ's finding that there were other jobs available in significant numbers in the national and local economy which could be performed by Plaintiff.

Tanguma has not objected to the magistrate judge's finding that there was no conflict between the vocational expert's testimony and the DOT, as the ALJ limited the vocational expert to only those jobs which did not require reading ability. Accordingly, the court accepts this finding as that of the court.[2]

---

[2]To the extent the court need even consider Tanguma's objections to the magistrate judge's alternative holding, the court overrules these objections. Remand is only necessary if the errors render the ALJ's determination unsupported by substantial evidence. *See generally Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (applying harmless error standard in social security cases); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (same); *see also Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (remand necessary where record does not contain substantial evidence to support the ALJ's conclusions). Substantial evidence supports the ALJ's conclusion that Tanguma could in general perform work which exists in significant numbers in Texas and the national economies. As the magistrate judge properly concluded:

> Even if the Court were to assume that the VE's opinion as to the jobs of flagger and locker room attendant was in error because she failed to specifically state that she was limiting her opinion to those positions not requiring literacy, the fact remains that she clearly identified two jobs which could be performed by Plaintiff. The VE

**Memorandum Opinion and Order – Page 11**

**III.    Conclusion**

For the reasons herein stated, the court **overrules** Plaintiff's objections to the Findings, Conclusions and Recommendations of the magistrate judge.  The court determines that the findings and conclusions of the magistrate judge are correct, **accepts** them as those of the court, and **affirms** the Commissioner's decision denying Plaintiff disability benefits.  This action is hereby **dismissed with prejudice**.

**It is so ordered** this 15th day of February, 2006.

Sam A. Lindsay
United States District Judge

---

testified that there were approximately 900 airline security screener positions in the state and approximately 1,000 positions as distributor of advertising materials.  (Tr. at 40-41.)

Report at 13.  Nine hundred airline security screener positions and approximately 1000 positions as a distributor of advertising materials constitute work existing in significant numbers.  *See Hollan v. Apfel*, 2001 WL 180151 at *8 and n.7 (N.D. Tex.  Feb. 20, 2001) (Sanders, J.) (and cases cited therein).

**Memorandum Opinion and Order – Page 12**